IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1203 |
| THIS DOCUMENT RELATES TO: JOANNE AND JON JUSTICE v. WYETH, ET AL. | NO. 07-20156 |

MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO.

Bartle, C.J.                                                                          December 21, 2009

        Now pending before the court is the motion of Wyeth to compel a third-party, The Regents of the University of California ("The Regents"), to produce documents pursuant to a subpoena issued on September 11, 2009 out of the United States District Court for the Southern District of California.[1] The Regents object to producing the responsive documents pursuant to § 1157 of the California Evidence Code, which exempts from discovery the

---

[1] As the court presiding over the MDL, we have authority to enforce the subpoena issued out of the Southern District of California. In re Asbestos Products Liab. Litig., 256 F.R.D. 154 (E.D. Pa. 2009). Pursuant to 28 U.S.C. § 1407, the judge to whom a civil action is assigned for coordinated or consolidated pretrial proceedings "may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings." Courts typically interpret pretrial depositions to include document production subpoenas. In re Clients and Former Clients of Baron & Budd, P.C., 478 F.3d 670, 671 (5th Cir. 2007).

proceedings and records of a peer review body having the responsibility of evaluation and improvement of the quality of care rendered in a hospital.

I.

In 2007, Ms. Justice and her husband filed suit in the Superior Court of Riverside County in California in connection with injuries she allegedly sustained as a result of ingesting diet drugs. In August of that year, the case was removed to the United States District Court for the Central District of California based on diversity of citizenship. In October of 2007, the Judicial Panel on Multidistrict Litigation transferred the case to this court under 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings.

Ms. Justice has been diagnosed with pulmonary hypertension and chronic thromboembolic pulmonary hypertension ("CTEPH"). To treat her CTEPH, she underwent a single-lung transplant at the University of California, San Diego Medical Center ("UCSD"). The September 11, 2009 subpoena served by Wyeth seeks: (1) the images of the November 7, 2002 cardiac catheterization and pulmonary angiogram; (2) the minutes of the Transplant Conference relating to Ms. Justice from July of 2008 through the present; and (3) the Lung Transplant Selection/Quality Assurance Committee notes relating to Ms. Justice from July of 2008 through the present. The Regents

served objections to certain portions of the September 11, 2009 subpoena prompting Wyeth to file a motion to compel compliance with the subpoena.

II.

The Regents have now agreed to produce the images of the November 7, 2002 cardiac catheterization and pulmonary angiogram. Therefore, we need only address the production of the minutes of the Transplant Conference and notes of the Lung Transplant Selection/Quality Assurance Committee.

Dr. Gordon Yung, the Director of the Advance Lung Disease Program, Medical Director of the Lung Transplant Program and Associate Director of the Medical Intensive Care Unit at UCSD, has filed a declaration in which he states that the Quality Assurance Committee meetings are also those of the UCSD Medical Center's Transplant Conference and, therefore, only one agenda and one set of minutes are generated. The Regents have located the agendas and minutes of meetings of the Transplant Conference/Lung Transplant Selection/Quality Assurance Committee (the "Committee") from July of 2008 to the present that reference Ms. Justice. Meetings of the Committee in which Ms. Justice was referenced took place on January 27, 2009 and June 2, 2009 and the minutes of these meetings are the subject of Wyeth's subpoena (the "Committee Minutes").

The Regents object to producing the Committee Minutes

pursuant to § 1157 of the California Evidence Code, which states, in pertinent part: "Neither the proceedings nor the records of . . . a peer review body, as defined in Section 805 of the Business and Professions Code, having the responsibility of evaluation and improvement of the quality of care rendered in the hospital . . . shall be subject to discovery."  Cal. Evid. Code § 1157.

Section 1157 "was enacted upon the theory that external access to peer investigations conducted by staff committees stifles candor and inhibits objectivity."  <u>Matchett v. Superior Court of the State of Cal.</u>, 115 Cal. Rptr. 317, 320 (Cal. Ct. App. 1974).  It "evinces a legislative judgment that the quality of in-hospital medical practice will be elevated by armoring staff inquiries with a measure of confidentiality."  <u>Id.</u>  Section 1157 "represents a legislative choice between competing public concerns" and "embraces the goal of medical staff candor at the cost of impairing plaintiffs' access to evidence."  <u>Id.</u> at 321.

The burden of demonstrating that the requested documents are immune from discovery rests on the party resisting the production of it.  <u>Id.</u> at 319.  In ruling on this motion to compel, we must "match the staff committee's mission and function against the specifications of the statute."  <u>Id.</u>  As noted above, the Regents have submitted a declaration from Dr. Yung, which explains, in detail, the function, purpose and composition of the Committee.

Dr. Yung has been a member of the Committee since 2007. According to Dr. Yung, the Committee is responsible for quality assurance of the Lung Transplant Program at the UCSD Medical Center. The Committee holds weekly meetings, which are attended by the medical and professional staff. Dr. Yung attests that the "purpose of the weekly Committee meetings is to discuss ongoing patient care issues and quality assurance related to UCSD Medical Center's heart and lung transplant program." Yung Declaration, ¶ 3. The Committee assesses all heart and lung transplant patients in the hospital and past patients with specific medical issues. The Committee discusses how to improve the operations and procedures of the heart and lung transplant program. In his declaration, Dr. Yung gives an example of the Committee's operations:

> . . . if we notice an increase in infections in our patients, we would assess whether this is an incidental finding, or if the finding warrants further investigations and changes in our guidelines for prophylactic medications. If there is a serious complication in any patient after transplant surgery, we discuss this with the purpose of improving not just simple patient care, but also with the objective of understanding whether there are certain procedures or methods that the transplant program should improve.

Id. at ¶ 4.

According to Dr. Yung, the function of the Committee also entails ensuring high quality patient care. In this regard,

specific Committee members are often delegated specific tasks to resolve specific issues, such as infections in transplant patients.  The Committee tracks the outcomes to ensure that the issues are resolved.  With regard to specific patients, the Committee reviews the complications and results of each lung or heart transplant surgery performed at the hospital.

Another task of the Committee is the assessment of referral patients for lung transplantation.  The Committee determines whether a patient may benefit from the surgery and evaluates the most appropriate type of transplant procedure.  Finally, the Committee reviews standards and procedures for patient care with regard to the heart and lung transplant program.  The Committee must approve significant changes to the standards and procedures.

Through the uncontradicted declaration of Dr. Yung, the Regents have demonstrated that the Committee is a peer review body responsible for the evaluation and improvement of the quality of care rendered at UCSD.  Dr. Yung specifically states in his declaration that the Committee is composed of the medical and professional staff of UCSD Medical Center and that the purpose of the Committee is "quality assurance related to UCSD Medical Center's heart and lung transplant program."  Yung Decl., ¶ 3.  He further attests that the Committee is responsible for quality assurance.  Dr. Yung's declaration clearly demonstrates

that the Committee's mission and function meet the statutory specifications.

We recognize that § 1157 limits a party's right to what may be relevant evidence in a pending lawsuit. Nonetheless, we will not second guess the judgment made by the California legislature to maintain the confidentiality of such information in order to encourage unfettered discussion among physicians and thereby enhance the quality of medical care in the state. Accordingly, we find that Committee Minutes are immune from discovery pursuant to Cal. Evid. Code § 1157.

Wyeth argues that the Regents have waived their right to argue that the Committee Minutes are immune from discovery because they previously produced some minutes to Wyeth in this litigation. Wyeth's waiver argument misses the mark. California courts have repeatedly held that § 1157 provides an immunity from discovery, as opposed to a privilege. Matchett, 155 Cal. Rptr. at fn. 3; Univ. Of S. Cal. v. Superior Court of Los Angeles County, 53 Cal. Rptr. 2d 260, 265 (Cal. Ct. App. 1996). In our view, the Regents do not and cannot annul the statutory bar against discovery by mistakenly producing documents in violation of the statute. The legislative act that the proceedings and records of a peer review body are not subject to discovery remains in effect and is simply not subject to waiver.

Accordingly, we will enter an Order denying the motion

of Wyeth to compel The Regents of the University of California to produce documents pursuant to the September 11, 2009 subpoena.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | : : : : | MDL DOCKET NO. 1203 |
| THIS DOCUMENT RELATES TO: | : : | |
| JOANNE AND JON JUSTICE | : : | |
| v. | : : | |
| WYETH, ET AL. | : : | NO. 07-20156 |

PRETRIAL ORDER NO. _____

AND NOW, this 21st day of December, 2009, it is hereby ORDERED that the motion of Wyeth to compel The Regents of the University of California to produce documents pursuant to the September 11, 2009 subpoena is DENIED.

BY THE COURT:

/s/ Harvey Bartle III
                    C.J.